**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Narcisa SAVINOVICH,
Defendant–Appellant.**

**No. 87–3049.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 5, 1988.

Decided April 26, 1988.

As Amended on Denial of Rehearing
and Rehearing En Banc
July 6, 1988.

Norman L. Lindstedt, Lindstedt & Buono, Portland, Or., for defendant-appellant.

Frank Noonan, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before HALL and O'SCANNLAIN, Circuit Judges, and KELLER,[*] District Judge.

O'SCANNLAIN, Circuit Judge:

Savinovich appeals her convictions for possession of cocaine with intent to distribute and for attempted distribution, raising evidentiary issues. Savinovich also argues that the statute under which she was sentenced is constitutionally infirm because it classifies punishment according to quantity of cocaine possessed without regard to its purity. Finally, she contends that her mandatory five year sentence is cruel and un-

---

[*] The Honorable William D. Keller, United States District Judge for the Central District of California, sitting by designation.

usual punishment. We disagree with her contentions and affirm the convictions.

## BACKGROUND

Narcisa Savinovich and her husband, Rafael Villalobos–Padilla ("Villalobos") were charged in an indictment with (1) conspiracy to distribute cocaine; (2) possession of cocaine with intent to distribute; and (3) attempted distribution of cocaine, all in violation of 21 U.S.C. §§ 841(a)(1) and 846. Villalobos pleaded guilty and received a ten-year sentence. Savinovich pleaded not-guilty and was tried before a jury.

The jury heard testimony that a police informant agreed to buy two kilograms of cocaine from Villalobos and Gustavo Martinez, a waiter at a restaurant owned by Savinovich. The agreed price was $68,000. There was evidence that two kilograms of cocaine comprise 8,000 dosage units with a street value of approximately $100,000.

About fifteen minutes after the agreement was reached, police observed Villalobos enter a house he shared with Savinovich. Half an hour later, Villalobos and Savinovich were seen leaving the house. Savinovich carried a white shopping bag that "appeared to have some weight to it." She walked to the driver's side of a car, placed the bag on the seat, and got in behind the steering wheel. Villalobos entered the car on the passenger side. Later, police observed the same car arrive at Martinez's house. Savinovich got out on the driver's side and followed Villalobos into the house. She was seen carrying a white shopping bag that appeared to "contain something."

Shortly thereafter, police executed a search warrant on Martinez's house. They found a shopping bag, identified as the one Savinovich carried into the house, on a couch about two feet from where she was sitting. The shopping bag was partly tipped over, exposing a plastic bag full of a substance resembling cocaine. Another plastic bag of white powdery substance was found inside the shopping bag. One plastic bag contained 976 grams of 87% pure cocaine; the other contained 986 grams of 95% pure cocaine.[1]

At the same time, police executed a search warrant on the Villalobos–Savinovich house. In a closet adjoining the master bedroom, they found a balance beam scale set at 2,000 grams and $4,000 cash. There were men's and women's clothing in the closet. In another closet, police found a smaller gram scale with residue resembling cocaine on it. Both scales were admitted over defense counsel's objection. Beneath the kitchen sink, police also found packaging material that appeared to have contained at least a kilo of cocaine.

Testifying for the defense, Villalobos claimed that Savinovich did not know of the cocaine deal or that her shopping bag contained cocaine. Savinovich also testified that she knew nothing about the cocaine. She also denied knowledge of the scales or of several firearms found in her house.

In rebuttal, the government presented testimony that the scales were in plain view in both closets. Also, over objection, the government introduced two pistols found in the master bedroom closet and a sawed-off shotgun found in a kitchen cabinet.

At the close of the government's case in chief, the district court granted Savinovich's motion for a directed verdict on the conspiracy count, but denied it on the other two counts. The jury returned a guilty verdict on both remaining charges. Pursuant to 21 U.S.C. § 841(b)(1)(B)(ii), the trial court sentenced Savinovich to five years in prison followed by a special parole term of five years.

## DISCUSSION

### *Admission of Scales and Guns*

■ Savinovich argues that the district court's admission of the scales and fire-

---

1. The cocaine evaluated by the DEA was contained in different bags from the ones found next to Savinovich. However, the defense did not object to the introduction of the new bags into evidence. For that reason, we decline to consider whether the chain of custody was broken and the evidence erroneously admitted. *See* Fed.R.Evid. 103(a)(1).

arms into evidence was unfairly prejudicial under Fed.R.Evid. 403. We disagree. We review a trial court's admission or exclusion of evidence under Rule 403 for abuse of discretion. *United States v. Crespo-de Llano*, 830 F.2d 1532, 1544 (9th Cir.1987).

■ Rule 403 requires the proponent to show that the probative value of the offered evidence is not substantially outweighed by the danger of unfair prejudice. *United States v. Conners*, 825 F.2d 1384, 1390 (9th Cir.1987). Evidence creates unfair prejudice to the extent that the jury responds negatively to some aspect of the evidence unrelated to its tendency to make the contested fact more or less probable. *United States v. Johnson*, 820 F.2d 1065, 1069 (9th Cir.1987).

■ Because scales constitute one of the tools of the drug trade, they are probative of intent to distribute. *See, e.g., United States v. LaGuardia*, 774 F.2d 317, 320 (8th Cir.1985). Accordingly, scales found in a defendant's home are admissible to prove intent to distribute, not just to possess, contraband. *See United States v. Tebha*, 770 F.2d 1454, 1457 (9th Cir.1985); *United States v. Rohrer*, 708 F.2d 429, 435 (9th Cir.1983). Here, the district court admitted two scales found in plain view in Savinovich's closets. One scale had drug residue on it; the other was set at 2,000 grams, the agreed-upon weight for the cocaine deal. From this evidence the jury could reasonably infer that Savinovich intended to distribute, as well as to possess, cocaine.

Because guns are used in many drug transactions, "[i]t may reasonably be inferred that an armed possessor of drugs has something more in mind than mere personal use." *United States v. Cannon*, 472 F.2d 144, 145 (9th Cir.1972). Thus, guns seized from a defendant's residence are admissible in a trial for possession of a controlled substance with intent to distribute. *Crespo-de Llano*, 830 F.2d at 1544; *United States v. Restrepo–Rua*, 815 F.2d 1327, 1329 (9th Cir.1987); *United States v. Issacs*, 708 F.2d 1365, 1371 (9th Cir.), *cert. denied*, 464 U.S. 852, 104 S.Ct. 165, 78 L.Ed.2d 150 (1983). The firearms found in Savinovich's home were admissible under Rule 403.

## Sufficiency of Evidence

Savinovich argues there is insufficient evidence to support her conviction. Specifically, she argues that (1) she did not know her bag contained cocaine; (2) her possessory interest in the cocaine was insufficient to support conviction; and (3) there was no basis for the inference that she intended to distribute the drug. Viewing the evidence in the light most favorable to the government, we review these allegations to determine whether a rational jury could find Savinovich guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979).

### 1. Possession

■ A person may not be convicted of illegal possession of contraband unless she can exercise dominion and control over it. *United States v. Disla*, 805 F.2d 1340, 1350 (9th Cir.1986). Mere proximity to the drug, presence on the property where it is located, or association with the person who controls the drug is insufficient to support conviction for possession. *See id.* at 1351. But if there is a rational basis for attributing interest in the contraband to one party because of relationship with another, a trier of fact can infer sufficient knowledge to support a conviction for possession. *United States v. Hood*, 493 F.2d 677, 681 (9th Cir.) (defendant was married to driver of drug-laden car and had reason to know his destination and criminal intent), *cert. denied*, 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 84 (1974). Furthermore, a defendant's exclusive dominion over property on which contraband is found is strong circumstantial evidence of possession. *See United States v. Walitwarangkul*, 808 F.2d 1352, 1354 (9th Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 1909, 95 L.Ed.2d 515 (1987).

■ Here, Savinovich exercised dominion and control over the cocaine when she carried it from her house to the car, drove it to Martinez's house, and carried it into his

residence. *Compare Disla,* 805 F.2d at 1351. Moreover, there was thus a rational basis for the jury's association of Savinovich's interest in the cocaine with that of her husband. *See Hood,* 493 F.2d at 677.

### 2. Knowledge

■ Actual or positive knowledge is not necessary to support a conviction for possession of contraband if a defendant is aware of the high probability of possession and consciously disregards that possibility in an effort to remain ignorant. *United States v. Valle–Valdez,* 554 F.2d 911, 913 (9th Cir.1977). Moreover, possession of large quantities of narcotics may alone be sufficient to support the finding of knowing possession. *Walitwarangkul,* 808 F.2d at 1354; *United States v. Collins,* 764 F.2d 647, 652 (9th Cir.1985).

■ Here, Savinovich acknowledges carrying a bag containing almost two kilos of cocaine from her home to her car, driving it to Martinez's house, and carrying it inside. Possession of such a large quantity of cocaine under these circumstances is sufficient to support the jury's finding of knowing possession. *See Walitwarangkul,* 808 F.2d at 1354; *United States v. Haro–Portillo,* 531 F.2d 962, 963 (9th Cir. 1976) (defendant driver's knowledge of possession could be inferred from driving vehicle laden with contraband). Moreover, when the police raided the house, cocaine was found in plain view two feet from Savinovich. *See Tebha,* 770 F.2d at 1457 (reasonable jury could find defendant knowingly possessed drug when parcel was partially open when officers arrived on scene).

### 3. Intent to Distribute

■ Under 21 U.S.C. § 841(a), aiders and abettors are liable as principals so long as the proof against them encompasses the same elements as would be required to convict the principal. *United States v. Normandeau,* 800 F.2d 953, 956 n. 3 (9th Cir.1986). A defendant need not actually sell drugs to aid and abet in their distribution. *See United States v. Weaver,* 594 F.2d 1272, 1275 (9th Cir.1979). Rather, it is enough that the defendant associate with the criminal venture, participate in it, and seek by actions to make it succeed. *Id.*

Here, a rational jury could find that Savinovich associated with her husband's criminal venture by accompanying him on the transaction, and sought to make it succeed by driving the car and carrying the cocaine to the drop site. *See generally Weaver,* 594 F.2d at 1275. Accordingly, there was sufficient evidence for the jury to infer that she aided and abetted the distribution of cocaine.

■ Intent to distribute may be inferred from the purity, price, and quantity of the drug possessed. *See, e.g., Tebha,* 770 F.2d at 1456 (purity relevant to issue of whether defendant intended to "cut" drug and distribute it to others); *United States v. Ramirez–Rodriquez,* 552 F.2d 883, 885 (9th Cir.1977) (evidence of resale value of drug probative of intent to distribute); *Turner v. United States,* 396 U.S. 398, 422–24, 90 S.Ct. 642, 655–56, 24 L.Ed.2d 610 (1970) (intent to distribute drugs may be inferred from the amount seized). *See also United States v. Meyers,* 601 F.Supp. 1072, 1074 (D.Or.1984).

The jury could properly infer that Savinovich intended to distribute from the fact that the cocaine she possessed weighed almost four pounds and was at least 87% pure. *See United States v. Stewart,* 770 F.2d 825, 832 (9th Cir.1985) (possession of one ounce of 80% pure cocaine sufficient to show an intent to distribute), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 888, 88 L.Ed.2d 922 (1986). And the $100,000 street value of the seized cocaine is also evidence of her intent to distribute. *See Ramirez–Rodriquez,* 552 F.2d at 885.

### *Constitutionality*

Savinovich argues that the mandatory penalty scheme of 21 U.S.C. § 841(b)(1)(A)(ii) denies her due process and equal protection because it bases the severity of punishment on the quantity, rather than purity, of the drug possessed. Specifically, she argues that under the newly amended statute, a mere "street dealer"

possessing cocaine which had been "cut" several times may serve a minimum mandatory sentence greater than a manufacturer possessing a smaller but purer quantity of the drug. Savinovich also argues that the minimum mandatory penalties prescribed under 21 U.S.C. § 841(b)(1)(A)(ii) constitute cruel and unusual punishment. Our review is *de novo. See Polykoff v. Collins*, 816 F.2d 1326, 1335 (9th Cir.1987) (review de novo district court's determination of federal constitutional law).

### 1. Purity of Drug

██ "Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for. which the classification is made." *Baxstrom v. Herold*, 383 U.S. 107, 111, 86 S.Ct. 760, 763, 15 L.Ed.2d 620 (1966). For that reason, we are limited to an inquiry into whether the legislative classification under 21 U.S.C. § 841(b)(1)(B)(ii) is irrational or unreasonable. *See United States v. Alexander*, 673 F.2d 287, 288 (9th Cir.), *cert. denied*, 459 U.S. 876, 103 S.Ct. 168, 74 L.Ed.2d 139 (1982). *See also United States v. Holmes*, 838 F.2d 1175, 1178 (11th Cir.1988) (we determine only whether Congress' judgment was rational).

Subtitle A of the Anti–Drug Abuse Act of 1986 prescribes minimum sentences of five years without parole for convictions involving 500 grams or more of a mixture involving cocaine. 21 U.S.C. § 841(b)(1)(B)(ii). In interpreting the penalty section of this statute, we may discern Congress' intent by looking to the language, structure, legislative history, and motivating policies of the statute in question. *Bifulco v. United States*, 447 U.S.

381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980).

Congress was well aware that its punishment scheme did not focus on "the number of doses of the drug that might be present in a given sample." H.R.Rep. No. 845, 99th Cong., 2d Sess. Part 1 at 12 (1986). Instead, Congress chose a "market-oriented approach" to focus on those "who are responsible for creating and delivering very large quantities of drugs," including the "managers of the retail level traffic" selling "substantial street quantities." *Id.* at 11–12. Congress clearly thought that dealers who possessed substantial street quantities of drugs deserved severe punishment.[2] The classification scheme's focus on quantity is thus directly related to Congress' desire to prevent both wholesale and retail distribution of illegal drugs. A classification scheme, therefore, of mandatory punishments for possessors of more than 500 grams of cocaine is not unreasonable or irrational. *See Baxstrom*, 383 U.S. at 111, 86 S.Ct. at 763; *Alexander*, 673 F.2d at 288. Although a street dealer possessing impure cocaine *could* be sentenced to a greater term than a higher-level dealer possessing a smaller amount of pure cocaine, "equal protection of the laws does not require Congress in every instance to order evils hierarchically according to their magnitude and to legislate against the greater before the lesser." *United States v. Holland*, 810 F.2d 1215, 1219 (D.C.Cir.) (interpreting Anti–Drug Abuse Act of 1986), *cert. denied*, — U.S. —, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987).

### 2. Cruel and Unusual Punishment

██ A criminal sentence must be proportionate to the crime for which the defendant has been convicted. *Solem v.*

---

**2.** During the floor debate, one senator commented extensively on the penalty provision of the bill:

> We divide these major drug dealers into two groups for purposes of fixing what the required jail terms shall be: For the kingpins—the masterminds who are really running these operations—and they can be identified by the amount of drugs with which they are involved—we require a jail term upon conviction [of 10 years] ... Our proposal would

also provide mandatory minimum penalties for middle-level dealers as well. Those criminals would also have to serve time in jail. The minimum sentences would be slightly less than those for the kingpins, but they nevertheless would have to go to jail—a minimum of five years for the first offense and ten years for the second.

132 Cong.Rec.S. 14,301 (daily ed. Sept. 30, 1986) (statement of Senator Byrd).

*Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983). In reviewing sentences under the eighth amendment, we must grant "substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes[.]" *Id.* In evaluating the constitutionality of a penalty, we consider three factors: (1) the gravity of the offense and harshness of the penalty; (2) the comparison with sentences imposed on other criminals in the same jurisdiction; and (3) where appropriate, the comparison with sentences imposed for commission of the same crime in other jurisdictions. *Id.* at 290–92, 103 S.Ct. at 3009–11.

Here, a grave offense was proven to have been committed: possession of 8,000 dosage units of cocaine worth $100,000 with intent to distribute. Congress has made the determination that those possessing this quantity of the drug are major traffickers and managers of retail level traffic. *See* footnote 2, *supra.* In light of the severity of the crime and drug-related problems of today's society, we find that the penalty is proportionate to the crime committed.

A comparison of Savinovich's sentence with punishments imposed for other crimes satisfies the second *Solem* criteria. Congress determined that the harm to society caused by the distribution of illegal drugs is so grave that the minimum mandatory penalties are a necessary deterrent.[3] We decline to undermine Congress' broad authority to make this determination.

Although all the sentences imposed under section 841(b) must meet the mandatory minimum requirement, harsher sentences handed down for drug possession crimes have withstood eighth amendment scrutiny. *See, e.g., United States v. Valenzuela*, 646 F.2d 352, 354 (9th Cir.1980) (life sentence without parole for repeat

drug-offender); *United States v. Wylie*, 625 F.2d 1371, 1380 (9th Cir.1980) (20 year sentence for manufacture and distribution of LSD), *cert. denied*, 449 U.S., 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981).

Because the mandatory five-year sentence imposed on Savinovich meets the criteria enunciated by the Supreme Court in *Solem*, it satisfies the eighth amendment.

AFFIRMED.

---

**3.** During the floor debate on the Anti–Drug Abuse Act, it was said that: "The widespread use of illegal drugs is one of the most pressing problems facing our society. Illegal drugs are killing children and destroying families. Vast profits from the sale of illegal drugs have created a new criminal underworld which promotes violence and feeds on death." 132 Cong. Rec.S. 14,282 (daily ed. Sept. 30, 1986) (statement of Senator Kennedy).