877 F.2d 65
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 UNITED STATES of America, Plaintiff-Appellee,
v.
Leonardo SUBIAS, Defendant-Appellant.
 No. 88-5333.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 5, 1989.
Decided June 13, 1989.
 Before: HUG, K.K. HALL, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Leonardo Subias appeals his judgment of conviction for conspiracy to distribute cocaine in violation of 21 U.S.C. Secs. 841(a)(1), 846, and aiding and abetting the distribution of cocaine in violation of 18 U.S.C. Sec. 2(a) and 21 U.S.C. Sec. 841(a)(1). We affirm.
 
 
 3
 * The Drug Enforcement Agency (DEA) initiated an undercover narcotics investigation in 1980 that led to appellant's arrest. Using confidential informant Richard Young, the DEA arranged a meeting on April 3, 1980, with Salvador Bernal. DEA agent Marilyn Johns posed as an interested purchaser of cocaine. Bernal offered to supply cocaine in multi-kilogram quantities at $70,000 per kilogram. Bernal gave Johns a sample of cocaine. On April 7, 1988, Johns and another DEA agent, David Surh, met Bernal and two other individuals, Roberto Ornelas and Gilberto Sarabia, to finalize the details of a one-kilogram cocaine purchase. They agreed to meet the following day.
 
 
 4
 The undercover agents and Young met Bernal and Ornelas on April 8 at a public restaurant in Monetery Park, California. Other DEA agents conducted surveillance of this meeting. Bernal and Ornelas suggested that they proceed to a private residence in the area. Bernal told agent Surh that the cocaine would arrive at the house at 1:00 p.m. Appellant Subias and German Gomez arrived at the house at 1:00 p.m. Bernal acted as a translator for Subias, who did not speak English. Subias told Surh that the cocaine was on its way. Subias and Bernal then telephoned an individual to whom they spoke in Spanish. Afterwards, Subias told agent Surh, again using Bernal as a translator, that the cocaine was due in about forty minutes and was coming from the San Fernando Valley.
 
 
 5
 Agents Surh and Johns, informant Young, and Bernal left the house and went to a restaurant to wait for the cocaine's arrival. Surh returned to the house, finding only Ornelas and Sarabia but no cocaine. Surh left the house and returned shortly thereafter. As the cocaine still had not arrived, Surh again departed. During Surh's absence, Subias and Gomez returned to the house. Gomez carried a bag into the house. Surh telephoned the house soon afterwards, and Bernal told him that the cocaine had arrived and that he should come back. After Surh returned to the house, Bernal stated that the cocaine was ready, and Sarabia directed him to the back of the house. Gomez retrieved about one kilogram of cocaine from a bag and handed it to Surh. Agent Surh spoke with Gomez using Bernal as a translator.
 
 
 6
 DEA agents conducted surveillance of the house and the restaurant where the parties passed the time until the cocaine's delivery. These agents observed a Cadillac occupied by two persons, including appellant Subias, driving very slowly through a parking lot near the restaurant. Subias and his companion were looking around. After agent Surh first returned to the house, DEA agents again noticed the Cadillac traveling at a slow speed in the neighborhood. The Cadillac Subias was driving in was observed in at least seven different locations near the house over the next hour and a half. The agents always observed it moving very slowly with the occupants looking around. Subias and his companion were arrested in the Cadillac after Surh returned to the house for the final time to purchase the cocaine.
 
 II
 
 7
 Appellant first argues that the district court improperly denied his request for a continuance of trial. We review the trial court's ruling for a clear abuse of discretion. See United States v. Flynt, 756 F.2d 1352, 1358 (9th Cir.), modified on other grounds, 764 F.2d 675 (1985). We find a clear abuse of discretion where the district court's denial of a continuance is "arbitrary or unreasonable." United States v. Pope, 841 F.2d 954, 956 (9th Cir.1988).
 
 
 8
 On June 6, 1988, the government notified appellant that it intended to introduce evidence of his prior involvement in an unsuccessful heroin sale as a prior bad act under Fed.R.Evid. 404(b). Trial was set for June 14. Appellant filed a motion for continuance the day before trial, arguing that he needed time to prepare to challenge the government's evidence of the alleged prior heroin transaction. Appellant also requested more time in light of the recent completion of another criminal trial against him.
 
 
 9
 We consider four factors in reviewing asserted error through the denial of a continuance: (1) the extent of the defendant's diligence in his efforts to ready his defense; (2) how likely it is that the need for a continuance could have been met if it had been granted; (3) the extent to which granting the continuance would have inconvenienced the court and the opposing party; and (4) the extent to which the defendant might have suffered harm as a result of the denial of a continuance. See Flynt, 756 F.2d at 1359. None of these factors favors appellant.
 
 
 10
 Appellant was far less than diligent in preparing to address the prior heroin transaction. Appellant filed a motion on May 24, 1988, three weeks before trial, to exclude evidence of this transaction. As this motion indicates, appellant was made aware of the government's knowledge of the prior heroin transaction on May 10, 1988, two weeks after his arraignment. In addition, appellant made no showing that a continuance would permit him to discover witnesses to the prior heroin transaction. He failed to specify who they were, what they would testify to, and the probability of locating competent witnesses. See United States v. Hoyos, 573 F.2d 1111, 1114 (9th Cir.1978). Indeed, appellant conceded that it would be "difficult finding these witnesses." A continuance would have been especially inconvenient as four of the government witnesses already had arrived from outside the district to testify. The denial of a continuance was not an abuse of discretion.
 
 III
 
 11
 Appellant also argues that the district court erred by admitting evidence of his involvement in the prior unsuccessful attempt to sell heroin. We review the district court's evidentiary ruling under Rule 404(b) for an abuse of discretion. See United States v. Comerford, 857 F.2d 1323, 1324 (9th Cir.1988), cert. denied, 109 S.Ct. 812 (1989). In addition, appellant argues that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice under Rule 403. We also review this ruling for an abuse of discretion. See id.; United States v. Bowen, 857 F.2d 1337, 1341 (9th Cir.1988).
 
 
 12
 DEA agent Gilbert Avila testified that he met with appellant and German Gomez five weeks prior to the acts charged in the indictment. Avila negotiated with appellant to purchase three kilograms of heroin. Avila met appellant and Gomez at a Holiday Inn on February 26, 1980. Subias explained that the person with the heroin had been delayed, but that he could deliver two to four kilograms of heroin the following day. Subias apologized for the delay. Avila met appellant and Gomez as planned. Subias agreed to sell the heroin, but the sale was not completed, apparently after suspicions arose about police surveillance.
 
 
 13
 The government argues that this evidence is relevant to prove Subias' knowledge and intent, as well as his relationship with Gomez, who also was involved in the cocaine transaction charged in this indictment. Rule 404(b) provides:
 
 
 14
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 15
 Rule 404(b) "admits evidence of other crimes or acts relevant to an issue in trial, except where it tends to prove only criminal disposition." United States v. Bradshaw, 690 F.2d 704, 708 (9th Cir.1982), cert. denied, 463 U.S. 1210 (1983). The district court twice gave the jury limiting instructions that the evidence of appellant's involvement in the prior unsuccessful heroin transaction was admissible only to show knowledge or intent.
 
 
 16
 Here, the evidence clearly had a relevancy apart from proving appellant's criminal disposition. Gomez played a key role in both the unsuccessful heroin transaction and the cocaine sale involved in this case. Subias' relationship with Gomez demonstrated appellant's knowledge that the parties' were conspiring to distribute cocaine. As the government explains it, this evidence "established the existence of a criminal relationship between Subias and Gomez similar to the one charged in the indictment." The district court did not abuse its discretion in admitting this evidence.
 
 IV
 
 17
 Appellant challenges the district court's decision to admit into evidence appellant's failure to have appeared for trial on June 11, 1980, and to instruct the jury that evidence of flight may be considered in determining guilt or innocence. We review these rulings for an abuse of discretion. See United States v. Harris, 792 F.2d 866, 868-69 (9th Cir.1986); United States v. Feldman, 788 F.2d 544, 555 (9th Cir.1986), cert. denied, 479 U.S. 1067 (1987).
 
 
 18
 The district court admitted into evidence the following stipulation: "It is hereby stipulated by and between the parties that on June 11, 1980, the defendant Leonardo Subias was ordered by the court to appear for trial on July 30, 1980 in the case of United States versus Leonardo Subias, CR 80-373, and that on July 30, 1980 Leonardo Subias did not appear for trial and a bench warrant was issued at that time."
 
 
 19
 Appellant was arrested on April 8, 1980, immediately upon the conclusion of the conspiracy charged in the indictment. Trial was originally set for July 17, 1980, but then continued to July 30, 1980. Appellant failed to appear for trial. He was arrested in April 1988, in Salt Lake City, Utah, and returned to Los Angeles for trial.
 
 
 20
 Clearly, evidence of flight is admissible as evidence of consciousness of guilt and of guilt itself. See United States v. Harris, 792 F.2d 866, 869 (9th Cir.1986). A district court should instruct the jury as to the significance of a defendant's flight "only if there is evidence sufficient to support a chain of unbroken inferences from the defendant's behavior to the defendant's guilt of the crime charged." United States v. Silverman, 861 F.2d 571, 581 (9th Cir.1988). Analysis of this issue is aided by focusing on four necessary inferences: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." Id. (quoting United States v. Myers, 550 F.2d 1036, 1049 (5th Cir.1977), cert. denied, 439 U.S. 847 (1978)).
 
 
 21
 Appellant argues that there was no factual predicate to support the inference that his nonappearance was evidence of consciousness of guilt. In his motion in limine, appellant explained that he departed the United States after the initiation of deportation proceedings by the Immigration and Naturalization Service. Appellant suggests that the jury impermissibly was permitted to speculate as to his reasons for failing to appear at trial.
 
 
 22
 Appellant relies upon the case of United States v. Sanchez, 790 F.2d 245 (2d Cir.), cert. denied, 479 U.S. 989 (1986), which he describes as factually similar to this case. In Sanchez, the court stated that "any adequate evidentiary predicate must include some '[e]vidence surrounding [the] failure to appear [at trial],' and must thereby provide the jury with more than an opportunity for mere 'conjecture and speculation.' " Id. at 252 (citations omitted). The Sanchez court concluded that the "mere unexplained nonappearance for trial" was an inadequate evidentiary predicate for a flight instruction. Id. Instead, there must be some record evidence that "the defendant has not been seen by those to whom he is familiar, that he has left his customary residence, that those who have sought to find him have failed, and the like." Id.
 
 
 23
 In this case, the jury had before it evidence that appellant had failed to appear at trial as ordered. Appellant already had been arrested, arraigned, and pled not guilty. These circumstances satisfy the requisite unbroken chain of inferences necessary to support an inference that a defendant's failure to appear was not innocent. See United States v. Hernandez-Miranda, 601 F.2d 1104, 1107 (9th Cir.1979). The stipulation did not spell out these predicate facts, but rather left it to the jury to infer that one who has been ordered to appear at trial already has been arrested, arraigned, and pled not guilty. While a better practice would be to include such facts in the stipulation itself, such inferences are reasonably within the jury's purview. Finally, the jury had before it evidence that appellant's failure to appear at trial was not through inadvertence, and that he had not been present at his usual residence for some time. From the stipulation, the jury knew that appellant had failed to appear at trial nearly eight years prior to the present trial. In any event, as appellant had in fact fled the country and was not at his usual place of residence during this period, he can claim no prejudice from any speculation by the jury.
 
 V
 
 24
 Appellant next argues that the district court erred by permitting the government to introduce the testimony of a paid confidential informant. Appellant's key contention is that it is presumptively inappropriate to use informers paid on a contingent fee basis. Appellant concedes, however, that the Fifth Circuit's per se rule rejecting this type of testimony established in the case of Williamson v. United States, 311 F.2d 441 (5th Cir.1962), subsequently was overruled in United States v. Cervantes-Pacheco, 826 F.2d 310, 312 (5th Cir.1987) (en banc), cert. denied, 108 S.Ct. 749 (1988). Nonetheless, appellant urges this court to reject such testimony in this case because it poses "such a potential for the encouragement of perjured testimony in exchange for monetary benefits that fundamental fairness was denied the accused."
 
 
 25
 The Williamson court established a bar to the introduction of an informer's testimony where the government had directed the informer to make contact with a particular person and the informer's fee was contingent upon producing inculpatory evidence against that particular individual as to crimes not yet committed. Williamson, 311 F.2d at 444. Informer Young testified below that he would expect to get a larger fee if his assistance led to the arrest of several persons. Young contacted agent Johns and provided information that Bernal was involved in the drug trade. Young then set up a meeting between Bernal and Johns.
 
 
 26
 The government disputes appellants' contention that it entered into a contingent fee arrangement with Young. Young initiated the DEA's investigation of Bernal, not vice versa. Young had no specific agreement as to how much he would be paid for his assistance. The DEA did not pay Young for his trial testimony and the last time Young had received money from the DEA was in 1983.
 
 
 27
 Even considering Young's arrangement a contingent fee, we reject appellant's argument. Appellant extensively cross-examined Young concerning the details of his remuneration. In addition, the court instructed the jury that a paid informer's testimony must be viewed with greater suspicion than other testimony. There has never been a per se prohibition against contingent fee payments to informers in this circuit. Indeed, in United States v. Reynoso-Ulloa, 548 F.2d 1329, 1338 n. 19 (9th Cir.1977), cert. denied, 436 U.S. 926 (1978), this court declined to follow Williamson and upheld the testimony of an informant paid by a contingent fee. We agree with the Fifth Circuit that "it is up to the jury to evaluate the credibility of the compensated witness." Cervantes-Pacheco, 826 F.2d at 315.
 
 VI
 
 28
 Appellant contests the district court's decision to permit the government to introduce evidence of the street value of the cocaine. We review this ruling for an abuse of discretion. See United States v. Savinovich, 845 F.2d 834, 837 (9th Cir.), cert. denied, 109 S.Ct. 369 (1988).
 
 
 29
 Agent Surh testified that the street value for one kilogram of eighty-five percent pure cocaine in Los Angeles, California in 1980 was about $1,600,000. Appellant argues that it was "obvious" that this amount of cocaine was not intended for personal use, and that as intent to distribute was uncontested, it was prejudicial to admit evidence of street value.
 
 
 30
 Appellant concedes that evidence of resale value is admissible to prove intent to distribute. See Savinovich, 845 F.2d at 838. Of course, it is well-established that the intent to distribute can be inferred from the amount of drugs involved. See United States v. Ramirez-Rodriquez, 552 F.2d 883, 885 (9th Cir.1977). The government had the burden of proving beyond a reasonable doubt that appellant conspired with the intent to distribute cocaine. The district court's admission of this evidence was not an abuse of discretion.
 
 VII
 
 31
 Appellant argues that the district court erred by permitting the testimony of DEA agent Stephen Georges as an expert on countersurveillance and the structure of drug organizations. We review the district court's decision to admit expert testimony for an abuse of discretion. See United States v. McCollum, 802 F.2d 344, 345 (9th Cir.1986).
 
 
 32
 Appellant suggests that Georges' testimony was not proper under Fed.R.Evid. 702 because the evidence of appellant's countersurveillance activities was "clear." Georges testified to the general nature of countersurveillance activities conducted by those involved in illegal narcotics transactions. Rule 702 permits the admission of expert testimony that "will assist the trier of fact to understand the evidence or to determine a fact in issue." This evidence must be helpful to the trier of fact. See Fed.R.Evid. 704 advisory committee notes; United States v. Patterson, 819 F.2d 1495, 1507 (9th Cir.1987).
 
 
 33
 Agent Georges was an experienced DEA agent. He had been employed by the DEA for ten-and-one-half years and was an instructor in advanced narcotics investigations. He had assisted in approximately 2,000 surveillance assignments. His testimony was helpful to the jury and was therefore properly admitted. See United States v. Johnson, 735 F.2d 1200, 1202 (9th Cir.1984).
 
 VIII
 
 34
 Appellant requests that this court reverse his conviction because of the cumulative effect of the asserted errors below. However, we find that the district court did not err--cumulatively or otherwise. Accordingly, the conviction is
 
 
 35
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3