892 F.2d 84
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee.
v.
Hector BLANCO, Defendant-Appellant.
 No. 88-5257.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 5, 1989.
Decided Dec. 13, 1989.
 
 Before FLETCHER, NELSON and WILLIAM A. NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Hector Blanco pled guilty to a charge of possession with intent to distribute 328.7 grams of heroin in violation of 21 U.S.C. § 841(a)(1). He received the five-year minimum mandatory sentence for this offense as required by 21 U.S.C. § 841(b)(1)(B)(i). On appeal, Blanco argues that the minimum sentencing statute does not apply to drug couriers like himself. He further argues that, if the statute does apply, it violates the eighth amendment's prohibition against cruel and unusual punishments.
 
 
 3
 eighth amendment's prohibition against cruel and unusual punishments.
 
 Standard of Review
 
 4
 We review statutory interpretations de novo. United States v. Horowitz, 756 F.2d 1400, 1403 (9th Cir.), cert. denied, 474 U.S. 822 (1985). We also review constitutional issues de novo. United States v. Savinovich, 845 F.2d 834, 839 (9th Cir.1988).
 
 Background
 
 5
 On January 29, 1988, appellant Blanco agreed to transport a quantity of drugs from Tijuana, Mexico, into the United States. He had no previous criminal record. Blanco understood that the drugs were to be concealed in an automobile tire but now claims that he did not know the quality or quantity of drug that he had agreed to transport. In return, he expected to receive some unspecified assistance to shore up his failing lumber and hardware business so that he could support more adequately his eight children. Beyond this expectation, Blanco did not have an economic stake in the drug transaction. In the parlance of the illegal drug industry, persons who provide drug transportation services are known as "mules." Blanco was apprehended when he delivered the drugs.
 
 Discussion
 
 6
 Blanco calls upon this court to examine the legislative history of 21 U.S.C. § 841(b)(1)(B)(i) and to interpret the statute as excluding mules from its reach. If a statute is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning. TVA v. Hill, 437 U.S. 153, 184 n. 29 (1977), (citing Ex parte Collett, 337 U.S. 55, 61 (1949).[1] When "the plain language of [the] statute appears to settle the question before us ... we look to the legislative history to determine only whether there is 'clearly expressed legislative intention' contrary to that language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses." I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 432 n. 12 (1987) (emphasis added) (quoting United States v. James, 478 U.S. 597, 606 (1986) (emphasis added)).
 
 
 7
 The statute before us is plain and unambiguous on its face. As applied to Blanco, it reads:
 
 
 8
 (a) ... it shall be unlawful for any person knowingly or intentionally--
 
 
 9
 (1) to ... possess with intent to manufacture, distribute, or dispense, a controlled substance;
 
 
 10
 (b)(1)(B) In the case of a violation of subsection (a) of this section involving--
 
 
 11
 (i) 100 grams or more of a mixture or substance containing a detectable amount of heroin;
 
 
 12
 such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 21 U.S.C. § 841.
 
 
 16
 Blanco violated this statute. He transported more than 100 grams of a heroin substance. The statute does not require that he knew of the quantity and quality of drug that he transported. It requires only that he knew that the drug that he possessed was a controlled substance and that he possessed it with the intent to transport it. The transportation of a controlled substance is a necessary and sufficient element of its distribution. See United States v. Klein, 860 F.2d 1489, 1494 (9th Cir.1988). Therefore, the statute's plain and unambiguous language applies to drug transporters like Blanco.
 
 
 17
 Nevertheless, Blanco argues that the legislative history of this statute demonstrates Congress's intent to draw a distinction between audacious drug "kingpins" and humble "mules." Blanco's claim is based upon the statements of two legislators made during debate on the statute.[2] These statements give no indication that Congress thought that mules are not within the class of persons who "manufacture, distribute, or dispense" controlled substances. Section 841(b) imposes criminal sanctions based upon the quantity of drugs possessed by a defendant not upon his position in the illegal drug industry's organizational chart.
 
 
 18
 The statute seeks to extirpate an entire illegal industry and does not limit its force to the industry's leadership. Savinovich, 845 F.2d at 839 (Congressional intent was to prevent both wholesale and resale distribution of drugs). It directs our attention to the drug activity itself rather than to the characteristics of the individual who engages in the activity. This focus serves two ends. First, it recognizes the unprecedented threat that the illegal drug industry poses to our national fabric. Second, it reduces the illegal drug industry's incentive and ability to recruit criminally inexperienced persons as couriers and sales agents.[3]
 
 
 19
 This court has acknowledged that the social destruction created by a drug transaction is independent of whatever specific role that a defendant performed in the transaction or the number of times that the defendant performed similar transactions. "The fact that appellant may have had 'the lowest possible role' in a narcotics conspiracy does not diminish the level of culpability which attended his own acts." Klein, 860 F.2d at 1497. In Savinovich, we wrote that "Congress [has] determined that the harm to society caused by the distribution of illegal drugs is so grave that the mandatory minimum penalities are a necessary deterrent." 845 F.2d at 840. We previously have held that 21 U.S.C. § 841(b) applies to first time offenders. United States v. Hoyt, No. 87-1224 (9th Cir. Mar. 17, 1989). We now hold that § 841(b) applies to drug transporters.
 
 
 20
 Blanco also argues that the statute violates the eight amendment's prohibition of cruel and unusual punishment. Solem v. Helm, 463 U.S. 277 (1983), provides an analysis for determining whether a sentence is disproportionate to the point of being cruel and unusual. Several recent Ninth Circuit cases have applied Solem 's analysis and upheld the constitutionality of the mandatory minimum sentence provisions of 21 U.S.C. § 841. In United States v. Kinsey, 843 F.2d 383 (9th Cir.), cert. denied, 108 S.Ct. 2882 (1988), we upheld the constitutionality of the 20 year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). In United States v. Kidder, 869 F.2d 1328 (9th Cir.1989), we upheld the constitutionality of the mandatory sentencing provisions despite the appellant's argument that the application of the provisions to a Vietnam veteran who had sustained crippling war injuries constituted an eighth amendment violation. We may overturn a sentence only if it is "grossly " disproportionate to the offense committed." United States v. Busher, 817 F.2d at 1409, 1415 (9th Cir.1987) (emphasis in original)). We do not think that a five-year imprisonment for one of the most potentially destructive crimes of this day rises to that level of injustice.
 
 CONCLUSION
 
 21
 Blanco argues that he a sympathetic figure. He is a 64-year-old father of eight with no previous criminal record. He pleads that he accepted no fee for his services to the illegal drug industry and was impoverished by business calamities. Perhaps Blanco's claim that he acted out of economic exigency, psychological tension, and ignorance is true. However, criminal sanctions are society's last guidepost to those who have been unable to resist life's pressures with the assistance of more moderate suasions. Under no circumstances do Blanco's misfortunes license him to impose the destructive evils of the drug trade upon other members of society. We cannot confuse sympathy with leniency, especially in view of the responsibilities that Congress has entrusted to us in the regulation of the illegal drug industry. We affirm the judgments of the district court.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Supreme Court performed an analysis of legislative intent in TVA only because Justice Powell felt that an "absurd" result had been reached by applying the plain language of the statute
 
 
 [2]
 Senator Robert Byrd stated, "Our proposal would also provide mandatory minimum penalties for the middle-level dealers as well." 132 Cong.Rec. S14301 (daily ed. Sept. 30, 1986). Senator Dennis Deconcini stated, "But I also believe that the penalties for drug dealers must be severe." Id. at S14270
 
 
 [3]
 Senator Edward M. Kennedy stated, "The widespread use of illegal drugs is one of the most pressing problems facing our society. Illegal drugs are killing children and destroying families. Vast profits from the sale of illegal drugs have created a new criminal underworld which promotes violence and feeds on death." 132 Cong.Rec. S14282 (daily ed. Sept. 30, 1986). His remarks have been called "typical of Congress' concern." United States v. Hoyt, No. 87-1224, slip op. at 2532 (9th Cir. Mar. 17, 1989)