995 F.2d 234
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
HERIBERTO B., Defendant-Appellant.
 No. 92-10562.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 25, 1993.*
Decided June 1, 1993.
 
 Before: HUG, WIGGINS and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Heriberto B., a juvenile, appeals his conviction following bench trial for an act of juvenile delinquency in violation of 18 U.S.C. §§ 5031-5037, specifically, possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). Heriberto contends the evidence was insufficient to support his conviction. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 "There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' ". United States v. Reyes-Alvarado, 963 F.2d 1184, 1187-88 (9th Cir.) (quoting United States v. Adler, 879 F.2d 491, 495 (9th Cir.1988)), cert. denied, 113 S.Ct. 258 (1992). "Credibility determinations ... are matters left to the trier of fact." United States v. Vasquez, 858 F.2d 1387, 1391 (9th Cir.1988), cert. denied, 488 U.S. 1034 and 489 U.S. 1029 (1989).
 
 
 4
 To prove possession with intent to distribute marijuana, the government must show that the defendant (1) knowingly (2) possessed the marijuana (3) with the intent to distribute it. United States v. Walitwarangkul, 808 F.2d 1352, 1353 (9th Cir.), cert. denied, 481 U.S. 1023 (1987). Circumstantial evidence can establish both the knowledge and possession elements of the possession with intent to distribute charge. United States v. Hernandez, 876 F.2d 774, 778 (9th Cir.), cert. denied, 493 U.S. 863 (1989); see also Reyes-Alvarado, 963 F.2d at 1188. "A defendant has constructive possession of contraband if he 'knows of its presence and has power to exercise dominion and control over it.' " Reyes-Alvarado, 963 F.2d at 1188 (quoting Williams v. United States, 418 F.2d 159, 162 (9th Cir.1969), aff'd, 401 U.S. 646 (1971)). Possession of a large amount of drugs may itself be sufficient to support findings of both knowing possession and intent to distribute. United States v. Savinovich, 845 F.2d 834, 838 (9th Cir.), cert. denied, 488 U.S. 943 (1984).
 
 
 5
 Testimony adduced at trial revealed that on March 30, 1992, seventeen-year-old Heriberto B. was the driver of a pickup truck which approached a border checkpoint north of Nogales, Arizona. Also in the truck was eighteen-year-old Gabriel Martinez, a friend of Heriberto B.'s since junior high school. At the checkpoint, a Border Patrol Agent referred the truck to the secondary inspection area. Once in secondary, Heriberto B. accelerated the truck and sped away. After pursuit by Border Patrol Agents, Heriberto B. crashed into a tree. Both he and Martinez ran away. Martinez was caught at the scene. A search by the Border Patrol agents revealed that Martinez was in possession of Heriberto B.'s wallet. Heriberto B. contacted agents of the Drug Enforcement Agency (DEA) later that same day, but was not interviewed by a DEA agent until nearly one month later. Approximately 115 pounds of marijuana was discovered under the hood of the truck, in the door panels, and behind the seat in the cab.
 
 
 6
 Both Heriberto B. and Martinez testified at trial. Heriberto B. testified that Martinez picked him up in Nogales on the morning of March 30 in a pickup truck. Martinez told Heriberto B. that he had borrowed the truck from a friend and that he was on his way to a doctor's appointment in Tucson. He asked if Heriberto B. would like to go along for the ride and Heriberto B. agreed. The two cruised around Nogales for a while and eventually Heriberto B. asked if he could drive the truck. Martinez agreed and the two headed out of town towards Tucson with Heriberto B. driving. At the checkpoint, the truck was referred to secondary inspection. Heriberto B. pulled over and stopped, but Martinez looked at him threateningly and told him to leave when a Border Patrol agent approached the passenger side of the truck. Heriberto B. panicked and drove away. As they were fleeing, Martinez told him that the truck was loaded with marijuana. When the truck slowed, Martinez jumped out and began to run away, so Heriberto B. did the same. In his haste to get away, Heriberto B. left his wallet in the truck.
 
 
 7
 Martinez's testimony contradicted Heriberto B.'s in almost every particular. According to Martinez, he was at school on March 30 when he ran into Heriberto B. around lunchtime. Martinez told Heriberto B. he had a doctor's appointment in Tucson and Heriberto B. offered to give him a ride in a car he could borrow from a friend. The two got a ride from an unidentified friend to where the pickup truck was located. Heriberto B. already had the keys at that time. With Heriberto B. driving, they headed towards Tucson. Just before they arrived at the immigration checkpoint, Martinez noticed the marijuana hidden behind the seats of the pickup. At the immigration checkpoint, they were referred to secondary inspection. At secondary, Heriberto B. stopped the pickup and an agent approached the passenger door of the truck and asked Martinez to open the door and lean the seat forward so that he could look behind the seat. As Martinez leaned forward and began to open the door, Heriberto B. accelerated away from the checkpoint. The truck eventually crashed into a tree and both Heriberto B. and Martinez fled, with Heriberto B. getting out of the truck first. On his way out of the pickup, Martinez grabbed Heriberto B.'s wallet, which Heriberto B. had dropped on the seat.
 
 
 8
 Heriberto B.'s story was consistent with the story which he initially told the interviewing agent when he spoke to the DEA in late April 1992. Testimony by the arresting Border Patrol agents revealed that Martinez's story was not consistent with what he had initially told the arresting officers. The district court found that both Heriberto B. and Martinez were not telling the truth in their testimony, stating "I think there's been a lot of perjury in this courtroom today on both sides. I don't believe either of their stories." The district court explicitly rejected an aiding and abetting theory of guilt based on Heriberto B.'s action of continuing to flee when he learned of the presence of the marijuana after speeding away from the checkpoint. The court found that Heriberto B.'s alleged ignorance of the presence of the marijuana in the pickup until after he fled the border checkpoint was "a leap of faith I can't make."
 
 
 9
 Viewed in the light most favorable to the government, and given the district court's credibility determinations, the circumstantial evidence was sufficient to sustain the district court's conclusion that Heriberto B. was guilty of possession with intent to distribute marijuana. The fact that Heriberto B. was the driver of a pickup truck loaded with nearly 115 pounds of marijuana, some of it hidden behind the seat in such a manner that any person in the cab could not help but see it, when combined with his flight both by vehicle and later on foot after he crashed the truck into a tree, were facts sufficient to establish at the very least his constructive possession of the marijuana in question.[1] See Reyes-Alvarado, 963 F.2d at 1188 (defendant in constructive possession of methamphetamine where he was driver of vehicle containing drugs, was present when drug buy took place, and acted in a counter-surveillance manner). Furthermore, the large quantity of marijuana seized supports the district court's conclusion that Heriberto B. intended to distribute the marijuana. See Savinovich, 845 F.2d at 838. Accordingly, the district court did not err by denying Heriberto B.'s motion for acquittal.
 
 
 10
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In his reply brief, Heriberto B. emphasizes that the district court erroneously believed that the pickup truck had bucket, rather than bench seats, and that this factor played a large part in the district court's determination that Heriberto B. must have seen the marijuana stowed behind the seats in the truck. Nonetheless, the district court made a factual finding that the photographic exhibits before it "clearly show that the marijuana was very, very obvious." Furthermore, when Heriberto B. raised this argument in the district court, the district court responded that "[i]t's real clear here [in the photograph] that you can see back [to where the marijuana was stowed]." Accordingly, the issue of whether the truck had bucket or bench seats was not relevant to the determination below that the marijuana in the pickup truck was clearly visible to Heriberto B. from his position in the cab