8 F.3d 32
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NITED STATES of America, Plaintiff-Appellee,
v.
Vincent LOVEJOY, aka Saul Vega, Defendant-Appellant.
 No. 92-30429.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1993.
Decided Nov. 3, 1993.
 
 Before: GOODWIN, SCHROEDER and PREGERSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Sufficient evidence was introduced at trial to sustain Vincent Lovejoy's (a/k/a Saul Vega) convictions for conspiracy to distribute cocaine, distribution of cocaine, and possession of cocaine with intent to distribute. He challenges the sufficiency of the evidence on appeal, and also asserts that the court erred in denying Lovejoy's motion to compel the government to disclose the identity of a confidential informant. We affirm.
 
 
 3
 I. Sufficiency of the evidence.
 
 
 4
 In January 1992, defendant Saul Vega agreed to drive Celia Soto-Espinosa from California to Washington. In Washington, a series of conversations took place between Celia Soto-Espinosa and one Justo Mendez, a confidential informant working with Officer Herman Koppisch of the Tacoma Police Department. In these conversations Soto-Espinosa expressed her willingness to facilitate the sale of cocaine. Mendez and Soto-Espinosa agreed on prices, and confirmed meeting dates and places.
 
 
 5
 On January 10, Vega drove Soto-Espinosa from Seattle to a convenience store in Tacoma, where Soto-Espinosa met with Mendez for approximately thirty minutes. Vega remained in his van and did not take part in this conversation. On January 14, Vega drove Soto-Espinosa to the same Tacoma convenience store where they were again met by Mendez. Vega and Soto-Espinosa then followed Mendez to a "safe house" located in Tacoma and operated by the Tacoma Police Narcotics Unit.
 
 
 6
 At the safe house, Vega and Soto-Espinosa were met by Officer Koppisch, who was posing undercover as a buyer. Soto-Espinosa, standing in the kitchen, told Vega to follow Koppisch into the living area and confirm that he had the money. Later, Soto-Espinosa directed Vega to count the money. Officer Koppisch observed that while counting the money, "Vega was very careful, very relaxed [and] very meticulous in checking every particular stack of bills."
 
 
 7
 Koppisch testified that Vega appeared to be inspecting the bills for markings, and that while counting, Vega told Koppisch that "I have to be careful with police narcotics around, narcos around." According to Koppisch, Vega also made reference to this being "the first time [they] were there." During this time, Soto-Espinosa entered the living area and asked Koppisch if he wanted "another half," and that the "other half was $7000." Vega did not react to this statement and continued to count the money. All of the above activity in the living area was recorded on hidden video.
 
 
 8
 After Vega finished examining the money, Soto-Espinosa produced one kilogram of cocaine from her purse and handed it to Koppisch. Vega testified that this was the first time he saw the drugs and was extremely surprised, even though he did not outwardly display his emotion. Koppisch then gave Soto-Espinosa the money and expressed interest in doing "more business." Soto-Espinosa and Vega responded to Koppisch's statement by nodding, and Vega shook Koppisch's hand as he began to exit the residence. An arrest signal was given and the two were arrested.
 
 
 9
 Koppisch obtained a search warrant for the Seattle residence at which Soto-Espinosa and Vega had been staying. Police had earlier observed Vega and Soto-Espinosa at this residence, and it was the place from which Soto-Espinosa had made her initial telephone contact with the confidential informant. At the Seattle residence, the police found a plastic bag containing $23,000 in cash that apparently had been thrown from the bathroom window. Inside the house they found an additional $69,310 in cash and 497.6 grams of cocaine hidden behind a dresser drawer. The police arrested Ignacio Hernandez-Silva, the legal tenant of the house, and found 0.2 grams of cocaine inside his wallet. Both Soto-Espinosa and Hernandez-Silva pled guilty.
 
 
 10
 One cannot be convicted for guilt by association. United States v. Savinovich, 845 F.2d 834, 837 (9th Cir.1988), cert. denied, 488 U.S. 943 (1988); United States v. Melchor-Lopez, 627 F.2d 886, 891 (9th Cir.1980) (citing Miller v. United States, 382 F.2d 583, 587 (9th Cir.1967), cert. denied, 390 U.S. 984, and reh'g denied, 391 U.S. 971 (1968)). However, the agreement necessary for a conspiracy need not be explicit; it may be inferred from the circumstances. United States v. Melchor-Lopez, 627 F.2d at 891 (citing United States v. Thomas, 586 F.2d 123, 132 (9th Cir.1978)). Once the existence of a conspiracy is established "evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the connection is slight, is sufficient to convict [the defendant] with knowing participation in the conspiracy." Id. (emphasis in original) (quoting United States v. Dunn, 564 F.2d 348, 357 (9th Cir.1977)).
 
 
 11
 In United States v. Vasquez, 858 F.2d 1387 (9th Cir.1988), cert. denied, 488 U.S. 1034, and cert. denied, 489 U.S. 1029 (1989). Vasquez was arrested after he delivered five kilograms of cocaine to undercover police. The police then searched Vasquez's apartment, which at the time was being used by Gomez, and seized in excess of twenty-five kilograms of cocaine and $85,000 in cash. Gomez appealed his conviction for possession of the five kilograms of cocaine delivered by Vasquez on the ground of insufficient evidence. Id. at 1393. Gomez argued that his fingerprints were not found on the packages of cocaine, and that there was no testimony linking him to the packages. We upheld his conviction upon finding that the jury properly found Vasquez and Gomez to be part of a conspiracy to possess cocaine:
 
 
 12
 Applying the Supreme Court's decision in United States v. Pinkerton, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), we have explained that a "party to an unlawful conspiracy may be held responsible for substantive offenses committed by his coconspirators in furtherance of the unlawful project, even if the party himself did not participate directly in the commission of the substantive offense." United States v. Crespo de Llano, 838 F.2d 1006, 1019 (9th Cir.1987).
 
 
 13
 United States v. Vasquez, 858 F.2d at 1393.
 
 
 14
 Here, distribution of cocaine clearly took place at the Tacoma safe house. In addition, this Circuit has held that intent to distribute may be inferred from possession alone in certain circumstances. United States v. Savinovich, 845 F.2d at 838 ("Intent to distribute may be inferred from the purity, price, and quantity of the drug possessed.") Although the government did not present testimony regarding the 497.6 grams of cocaine found at the Seattle residence that such a quantity is consistent with an intent to distribute, this fact reasonably could have been inferred by the jury.
 
 
 15
 The jury also could have properly found Vega guilty of possession with intent to distribute under an aiding and abetting theory. Any person who aids or abets the commission of an offense against the United States may be punished as a principal. United States v. Martinez, 806 F.2d 945 (9th Cir.1986), cert. denied, 481 U.S. 1056 (1987). A defendant need not actually sell drugs to aid and abet in their distribution, but "[r]ather, it is enough that the defendant associate with the criminal venture, participate in it, and seek by actions to make it succeed." United States v. Savinovich, 845 F.2d at 838.
 
 
 16
 The evidence shows more than mere association of Vega with Soto-Espinosa and Hernandez-Silva. There was a "rational basis for attributing interest in the contraband to [Vega] because of relationship with [Soto-Espinosa and Hernandez-Silva]," upon which a jury could have inferred facts supporting a conviction for possession. United States v. Savinovich, 845 F.2d at 837 (citing United States v. Hood, 493 F.2d 677, 681 (9th Cir.), cert. denied, 419 U.S. 852 (1974)).
 
 
 17
 II. Vega's motion to compel the government to disclose the identity of informant.
 
 
 18
 We review the denial court of Vega's pretrial motion to compel disclosure of the government's confidential informant for an abuse of discretion. United States v. Sanchez, 908 F.2d 1443, 1451 (9th Cir.1990). Vega argues that the district court abused its discretion in not compelling disclosure of the informant because Mendez could have offered corroborating testimony regarding Vega's lack of participation in the conversations at the convenience store, as well as Vega's lack of knowledge of the impending drug transaction. The government responds that disclosure is required only if Mendez had been the only witness to the critical events, and that Soto-Espinosa was available to testify regarding these events.
 
 
 19
 The Supreme Court has rejected a "fixed rule" with respect to disclosure in favor of a balancing test. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The public interest in protecting the "flow of information" is balanced against "the individual's right to prepare his defense." Id. at 62; United States v. Sanchez, 908 F.2d at 1451. Whether nondisclosure is erroneous depends on the particular circumstances of each case, including "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Rovairo v. United States, 353 U.S. at 62.
 
 
 20
 Vega must show more than a mere "suspicion," United States v. Johnson, 886 F.2d 1120, 1122 (9th Cir.1989), cert. denied, 494 U.S. 1089 (1990), or mere "speculat[ion]," United States v. Trejo-Zambrano, 582 F.2d 460 (9th Cir.), cert. denied, 439 U.S. 1005 (1978), that the informant's testimony would prove helpful to his defense. The testimony that Vega wished to illicit from the confidential informant Justo Mendez--i.e., that Vega did not take part in the conversations between Mendez and Soto-Espinosa--would have been of questionable helpfulness to Vega. In addition, that any statements by Soto-Epinosa to Mendez existed regarding Vega's lack of involvement in the drug sale is pure speculation by Vega.
 
 
 21
 Notwithstanding Vega's claims, the potential significance of Mendez's testimony is low in view of the availability of Soto-Espinosa to testify. Having pled guilty, Soto-Espinosa was available to testify at Vega's trial. Boykin v. Alabama, 395 U.S. 238, 243 (1969) (defendant's guilty plea constituted a waiver of his privilege against self-incrimination). In United States v. Jaramillo-Suarez, 950 F.2d 1378, 1387 (9th Cir.1991), this Court found it significant that there was "no evidence to suggest that the informant was the only witness to any critical event." Vega presented no evidence why the informant's testimony, who had made a deal with the government, would have been any more favorable than that of Soto-Espinosa.
 
 
 22
 The district court did not find that disclosure would have been "highly relevant and might have been helpful to the defense." United States v. Ordonez, 737 F.2d 793 (9th Cir.1984) (district court abused its discretion in not ordering disclosure of informer's identity). In addition, Vega has the burden of demonstrating the need for disclosure. United States v. Johnson, 886 F.2d at 1122. There is nothing in the record to indicate that the district court abused its discretion in finding that Vega did not meet his burden.
 
 
 23
 Lastly, the government asserts that Vega has waived his right to appeal nondisclosure since he failed to renew his pretrial motion once trial began. The Eleventh Circuit decision that the government cites for this proposition is not on point. In United States v. McDonald, 935 F.2d 1212, 1216-1218 (11th Cir.1991), the magistrate treated the defendant's motion for disclosure of the informer's identity as a request for access to the informer because the defendant already knew his identity. The defendant failed to object to the magistrate's specific treatment of his motion. The Eleventh Circuit held that any objection the defendant may have had was waived. Id. at 1218.
 
 
 24
 There was evidence from which a reasonable jury could find that Vega took part in a conspiracy to distribute cocaine. The district court did not abuse its discretion in denying Vega's pretrial motion to disclose the government's confidential informant.
 
 
 25
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not e cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3