UNITED STATES of America,
Plaintiff-Appellee,

v.

Reynaldo RAMIREZ–RODRIQUEZ,
Defendant-Appellant.

No. 76–3352.

United States Court of Appeals,
Ninth Circuit.

April 25, 1977.

Michael J. Slish, Kent, Wash., submitted brief for defendant-appellant.

Stan Pitkin, U. S. Atty., Donald M. Currie, Asst. U. S. Atty., Seattle, Wash., submitted brief for plaintiff-appellee.

Before WRIGHT, KILKENNY and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant was convicted of possession with intent to distribute cocaine [21 U.S.C. § 841(a)], a narcotic substance under Schedule II, Title 21, U.S.C. § 812. The sole issue presented is whether there was sufficient evidence to establish intent to distribute. We find that there was and affirm.

Appellant is an inmate at McNeil Island federal penitentiary. Parks, an Assistant Food Administrator there, observed appel-

lant crouching behind a dough-mixing machine in the bakery. Parks approached and ordered appellant to come out and hold out his hands. A piece of paper fell to the floor and appellant wiped off a spoon in his hand. When ordered to come to Parks' office, Ramirez started "moving stuff around" behind the mixer. Parks observed a paper towel and some cellophane wrappings, one of which contained 13.74 grams of 30% pure cocaine and the other contained 25.66 grams of procaine, a non-controlled substance used to dilute cocaine. A spoon, two needles, and a syringe were also found behind the mixing machine.

A veteran corrections officer testified that most contraband found in the prison came to his attention. He said that he did not know the value of the seized narcotics but indicated that the seizure was very unusual and that rarely did prison authorities find drugs in that quantity.

A special agent testified that he had not previously seen cocaine usage at the prison. He estimated that the street value of the cocaine would be approximately $700 to $900. He then described how the cocaine could be cut into approximately 260 "bindles" which he believed would sell in the prison for $10 each. He testified further that the amount of narcotics used depended on the user and could range between one and ten bindles per day.

The defense called three witnesses, including appellant. One inmate testified that appellant was getting a "fix" from another person's stash. A second inmate testified to a conversation with Parks concerning the discovery of the cocaine. Appellant testified that he was a long-time heroin addict and that he did not like to use cocaine.

■ A fundamental rule on appeal is that the evidence must be viewed in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Further, it is the exclusive function of the jury to weigh the credibility of witnesses, resolve eviden-

tiary conflicts and draw reasonable inferences from proven facts, *United States v. Nelson*, 419 F.2d 1237, 1241 (9th Cir. 1969). Circumstantial and testimonial evidence are indistinguishable insofar as the jury fact-finding function is concerned, and circumstantial evidence can be used to prove any fact, *id.* at 1239. *United States v. Kelly*, 527 F.2d 961, 965 (9th Cir. 1976).

■ Here the inference of intent is drawn largely from the amount seized since there was no evidence to show that the cocaine was actually packaged for sale or that the defendant offered it to anyone. It is well-established, that intent to distribute may in the proper circumstances be inferred from the amount seized. *Kelly*, 527 F.2d at 965. *See also United States v. Gutierrez-Espinosa*, 516 F.2d 249 (9th Cir. 1975); *United States v. Ramirez-Valdez*, 468 F.2d 235 (9th Cir. 1972); *Turner v. United States*, 396 U.S. 398, 422–24, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).

In *Turner*, the Supreme Court had to decide whether the mere possession of a certain quantity of heroin and cocaine supplied the necessary foundation from which a statutory inference could be made of a prima facie intent to distribute under the importation prohibitions. The Court held that a "small quantity," which could as well be "for [the defendant's] personal use" as "for sale" will not support the inference. *Turner, supra* at 423–24, 90 S.Ct. 642. Conversely, *Turner* also held that if "it can . . . be said with substantial assurance that the presumed fact [the intent to distribute] is more likely than not to flow from the proved fact [possession] on which it is made to depend," the inference may be justified. *Turner, supra* at 405, 90 S.Ct. at 646.

The Court held that possession of 14.69 grams of a cocaine mixture (5% pure) was insufficient evidence to support the inference. *Turner, supra* at 423–24, 90 S.Ct. 642. Likewise, possession of two grams of cocaine has been held to be too small to raise the inference. *United States v. Olvera*, 523 F.2d 1252, 1253 (5th Cir. 1975).

At the other end of the spectrum, possession of 123.6 grams of cocaine plus methaqualone tablets [*United States v. Giles*, 536 F.2d 136, 141 (6th Cir. 1976)]; 199.73 grams of cocaine [*United States v. Echols*, 477 F.2d 37, 40 (8th Cir.), *cert. denied*, 414 U.S. 825, 94 S.Ct. 128, 38 L.Ed.2d 58 (1973)]; and 311.35 grams of cocaine [*United States v. Hutchinson*, 488 F.2d 484, 488–489 (8th Cir. 1973)] have been held sufficient to support the inference of intent to distribute under 21 U.S.C. § 841(a).

In *United States v. Gonzalez*, 442 F.2d 698, 708 (2nd Cir. 1970), the Second Circuit, sitting *en banc*, held that possession of more than one kilogram supports the inference under the importation statute. However, in providing guidelines to the government and the district courts for future cases, the court observed that the district courts would be well advised to refrain from charging or using the possible inference "when the quantity [of the cocaine] is of the order of 10 grams or less." 442 F.2d at 709.

■ Although the amount seized in the instant case, when calibrated at its pure level would be less than 10 grams, other circumstances compel us to find that there was sufficient evidence of intent to distribute.

First, there was evidence that the quantity of cocaine found was "very unusual" in the context of the prison setting and that prison authorities almost never found any narcotics in that quantity.

■ Second, evidence of resale value of the drug may support an inference of intent to distribute. *United States v. Mather*, 465 F.2d 1035, 1037 (5th Cir. 1972); *but cf. United States v. Welebir*, 498 F.2d 346, 351 n.5 (4th Cir. 1974) (such evidence is inadmissible). Here the evidence showed that pro-

caine found with the cocaine could be used to dilute the latter so that it would be possible to make approximately 260 "bindles" of 15% pure cocaine that would sell for $10 each in the institution. From the evidence it would be reasonable for the jury to infer that the resale value of the cocaine was $2,600. The figure is significant and the jury could conclude that the cocaine was not possessed merely for "personal use."

■ Third, whether the defendant is addicted to the drug found in his possession is another consideration in determining whether there was sufficient evidence of intent to distribute. *United States v. Kelly*, *supra* at 965. A finding of addiction may support an inference that a larger quantity of the drug may be kept for personal use. Here, however, the defendant testified that he was a heroin addict and that he did not like to use cocaine.

The amount of the cocaine seized, in light of these additional circumstances, provided relevant evidence from which the jury could properly find or infer, beyond a reasonable doubt, that the appellant possessed the cocaine with the intent to distribute it.

The judgment of the district court is affirmed.