UNITED STATES of America, Plaintiff,

v.

Merle Ellis OWENS, Defendant.

No. CR–83–240–T.

United States District Court,
W.D. Oklahoma.

Nov. 28, 1983.

William S. Price, U.S. Atty., Jim Robinson, Asst. U.S. Atty., Oklahoma City, Okl., for plaintiff.

Frank Courbois, Fred L. Staggs, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION AND ORDER

RALPH G. THOMPSON, District Judge.

The defendant is charged by a two count indictment, Count I charging him with conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846 and Count II charging him with possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Before the Court for consideration is (1) defendant's Motion to Suppress Evidence, (2) his Motion for Judgment of Acquittal as to Count I of the Indictment, and (3) the case on its merits.

On November 14, 1983, the Court heard testimony and arguments addressed to the defendant's Motion to Suppress Evidence, which was taken under advisement. Thereafter the defendant waived his right to a jury trial and the case was presented to the Court sitting without a jury. At the close of the government's case the defendant moved for judgment of acquittal on Count I of the indictment on the grounds that the government had failed to present any evidence in support of it.

This Memorandum Opinion and Order contains rulings both on the defendant's motions as well as the Court's findings of fact and conclusions of law from the trial.

### THE CONSPIRACY COUNT

■ As to Count I of the indictment, the government failed to present any evidence of an agreement between the defendant and another concerning possession of the cocaine with an intent to distribute it. In the absence of evidence concerning such an agreement, a finding that the defendant conspired with others cannot be made. *United States v. Vergara*, 687 F.2d 57 (5th Cir.1982); *United States v. Houde*, 596 F.2d 696 (5th Cir.1979), *cert. denied*, 444 U.S. 965, 100 S.Ct. 452, 62 L.Ed.2d 377 (1979). Accordingly, the defendant's motion for judgment of acquittal as to Count I of the indictment is sustained. Rule 29, Federal Rules of Criminal Procedure.

### THE POSSESSION COUNT

As to Count II, the evidence presented at trial established that approximately 2.3 ounces of cocaine that was 88 to 89 percent pure, a triple beam scale for measuring precise quantities in small amounts, a quantity of a diluting agent, Mannitol, a quantity of marijuana, various drug paraphernalia and a loaded gun were recovered by the police in the defendant's motel room under circumstances more specifically described hereafter. The cocaine had a "street value" of about $60,000. The defendant was the sole registered guest and occupied his motel room with a female companion for an extended period of time prior to and at the time of, his arrest. During his occupancy the defendant had received an extraordinary number of incoming telephone calls and visits of short duration by unidentified persons all of which aroused the suspicion of the motel management and prompted surveillance of the room.

■ These circumstances are sufficient to establish the defendant was in constructive possession of the cocaine. "Constructive possession" of a controlled substance occurs when a person does not have physical possession but does have the intent and capability of maintaining dominion and control of the substance or the ability to reduce it to actual possession. *United States v. Martinez*, 588 F.2d 495 (5th Cir.1979).

■ In view of the quantity of cocaine seized in the presence of a diluting agent, the sensitive measuring device, and the circumstances and activities described, the reasonable inference to be drawn is that the defendant intended to distribute a portion of his supply to others. *United States v. Ramirez-Rodriques*, 552 F.2d 883 (9th Cir.1977). 21 U.S.C. § 802(11) defines "distribute" to mean "to deliver" 21 U.S.C. § 802(8) defines "deliver" to mean "the actual, constructive, or attempted transfer of a controlled substance. The government is not required to establish the existence or anticipation of a sale." *United States v. Workopich*, 479 F.2d 1142 (5th Cir.1973). Moreover, the mere passing of narcotics between two individuals for their own personal use constitutes a distribution. *United States v. Branch*, 483 F.2d 955 (9th Cir.1973). The defendant was the sole registered occupant of the motel room in which the cocaine was discovered. There is no evidence to indicate that the cocaine was jointly acquired by the defendant and his companion, see, *United States v. Swiderski*, 548 F.2d 445 (2nd Cir.1977). Even if the defendant did not intend to sell the cocaine to others, he at least possessed it with the intention of sharing it with another.

■ Accordingly, the evidence is sufficient to establish beyond a reasonable

doubt that the defendant constructively possessed the cocaine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1), *provided,* the cocaine in his possession is legally admissible in his trial. Thus, the admissibility of the cocaine, as the product of a warrantless search, as challenged by the defendant's Motion to Suppress Evidence, is the determinative issue of the case.

## THE MOTION TO SUPPRESS EVIDENCE

After keeping the defendant's room under surveillance throughout the preceding night, on the morning of September 12, 1983, Officer Epperly, accompanied by Officer Matthews, both of the Oklahoma City Police Department, returned to the motel where they requested a public records check on the license tag of the defendant's car. They were advised that the license tag had been reported stolen. The officers kept the defendant's room under further surveillance. Between 7:30 and 12:00 noon they observed a female looking out of the room from time to time. Additionally, it is noted that the motel manager may have requested the officers to enter the room and remove the occupants and their possessions on the basis that the defendant had registered as, and been charged for, a single occupancy whereas two persons occupied the room, and further that the defendant was unpaid beyond check-out time without permission. About noon, Officers Epperly and Matthews, together with another officer, Digby, devised a plan to entice the defendant out of his room, pursuant to which Digby, who was not in uniform, knocked on the door of the room and, pos-

ing as a motel employee, asked the defendant to move his car so that maintenance could be performed on the parking lot. When the defendant departed his room and got into his car, he was arrested on the felony charge of receiving stolen property. After securing the defendant, Epperly and other officers proceeded to enter the defendant's room where they discovered the defendant's companion asleep on a bed. Also located about the room were the marijuana cigarettes, the various items of drug-related paraphernalia, the triple beam scale, various chemicals, glassware and the loaded gun. They opened a dresser drawer and in it found two closed bags containing the cocaine. The search and seizure were conducted without their first having obtained a search warrant.

 The question here is whether the extent of the search conducted in the defendant's room can be justified as an exception to the requirement for a search warrant under the Fourth Amendment to the Constitution of the United States.[1] A search conducted without a warrant is valid only to the extent that it complies with the particular requirements of the justifying exception unless information validly discovered during the search justifies a further search pursuant to one of the exceptions. Here the defendant was validly arrested while occupying a motor vehicle with a stolen license tag. Inasmuch as the police officers believed, not unreasonably, that the defendant had a companion in his motel room who posed a risk to their personal safety, the officers were justified under the exigent circumstances to enter the defendant's room in order to neutralize the possi-

---

**1.** There are generally nine recognized exceptions to the Fourth Amendment requirement that police officers must obtain judicial approval to conduct a search. These exceptions are as follows: (1) search conducted incident to a valid arrest, *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); (2) a stop and frisk, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); (3) a search conducted under exigent circumstances that compel the search to occur, *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); (4) a search of a motor vehicle in certain circum-

stances, *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); (5) evidence in plain view, *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); (6) airport searches to prevent air piracy; (7) border and customs searches, *United States v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977); (8) Searches conducted in a security institution such as a prison, *Lanza v. New York,* 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962); and (9) a search conducted pursuant to a valid consent, *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

bility of harm. Inasmuch as the officers were validly present in the room, they could seize any contraband or evidence of criminal activity which was in their plain view. *Coolidge v. New Hampshire,* supra. However, none of the generally recognized exceptions would have permitted the officers to extend their warrantless search into the contents of a closed container in a closed dresser drawer under these circumstances.

Therefore the cocaine offered as evidence against the defendant was seized by the police as the result of an unauthorized search. If the "exclusionary rule" is applied absolutely, such evidence of defendant's guilt must be excluded and the defendant acquitted. If the rule is not applied, or if a "good faith exception" to the rule is applied, the evidence is admissible and the defendant is found guilty.

### THE EXCLUSIONARY RULE

The exclusionary rule is not a part of the Fourth Amendment itself. It had its birth in 1914 when the United States Supreme Court decided *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). There it was held that the use at trial of illegally seized evidence constituted prejudicial error. The holding was justified on the grounds that the remedy it had fashioned was necessary to protect the individual's privacy as secured by the Fourth Amendment. More recently, the remedy fashioned in *Weeks* has been justified on the grounds that its "prime purpose is to deter future unlawful police conduct". *United States v. Calandra,* 414 U.S. 338 at 347, 94 S.Ct. 613 at 619, 38 L.Ed.2d 561 (1974). However, decisions of the Court increasingly question the efficacy of the

rule for this purpose, express concern for the high price society is paying for the doubtful beneficial effects it is providing and continue to make significant departures from its application in certain circumstances.

In his dissenting opinion in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) at 416, 91 S.Ct. at 2014, Chief Justice Burger stated "there is no empirical evidence to support the claim that the rule actually deters illegal conduct of law enforcement officials." In *Calandra,* supra, the Court held that the rule "has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." [2]

In *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Court denied application of the rule in federal habeas corpus review of state convictions under certain conditions, while otherwise reaffirming its adherence to the rule. However, the Court also indicated that it should not be applied through a blind adherence to judicial policy:

> "The disparity in particular cases between the error committed by the police officer and the windfall afforded a guilty defendant by application of the rule is contrary to the idea of proportionality that is essential to the concept of justice. Thus, although the rule is thought to deter unlawful police activity in part through the nurturing of respect for Fourth Amendment values, if applied indiscriminately it may well have the opposite effect of generating disrespect for the law and administration of justice." 428 U.S. at 490-1, 96 S.Ct. at 3050-1 (footnote omitted).

2. In *Calandra,* the Supreme Court refused to extend the application of the rule to grand jury proceedings. In reaching this conclusion, the Court balanced "the potential injury to the historic role and functions of the grand jury against the potential benefits of the rule." In *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), the Supreme Court refused to apply the rule at trial to evidence unlawfully seized from a third party not before the court by weighing the benefits of the rule to

the detriment caused by its imposition. In reaching its conclusion, the Court cited *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), for the proposition that: "[A]ny apparent limitation upon the process of discovering truth in a federal trial ought to be imposed only upon the basis of considerations which outweigh the general need for untrammeled disclosure of competent and relevant evidence in a court of justice." 447 U.S. at 735, 100 S.Ct. at 2446.

Protecting citizens from unlawful police conduct and all other violations of constitutional rights is profoundly laudable and necessary. However, an analysis of the controlling authorities permits the conclusion that the rule need not be applied as a matter of judicial rote and that it is not the *only* remedy that can be applied for a Fourth Amendment violation. It is acknowledged that, as yet, no Supreme Court decisions have expressly so held.[3] However, while arising out of different factual circumstances, other courts have concluded that the present state of the controlling decisions does not require an absolute application of the rule and permits, at least, a good faith exception to it. See *United States v. Williams*, 622 F.2d 830 (5th Cir. 1980), *cert. denied*, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114, which held that where law enforcement officials have acted without authority or mistakenly, yet in the reasonable good faith belief that such action was proper, the exclusionary rule shall not apply. I conclude that while the exclusionary rule remains as one of the remedies to protect against unlawful police activity, a good faith exception may apply in a proper case and, moreover, the rule is but one of several remedies that can be applied for such violations.[4] It is neither the only remedy or deterrent nor the one required to be imposed absolutely when such a violation has occurred.

Among the other existing remedies presently available for such violations are civil suits for money damages against the erring officers, state and federal, and their employing agencies. 42 U.S.C. § 1983; *Bivens v. Six Unknown Named Agents*, supra. The availability of these remedies provide both redress for the individual and deterrents from further unlawful police conduct.[5]

Given the availability of other protections in the form of remedies and deterrents, the old concept that "the criminal is to go free because the constable has blundered" is neither necessary constitutionally nor affordable socially.

In this case, the police found themselves legitimately in a room virtually overflowing with evidence of criminal activity. Their error was that they proceeded to search the contents of a closed drawer in the room without first obtaining judicial approval. Had the police officers sought such approval, it is a virtual certainty that it would have been granted. Had they first obtained a warrant it would have delayed, but not prevented, the police discovery of the evidence sought to be suppressed. While the defendant complains that his Fourth Amendment rights were violated, the remedy he seeks, i.e., the exclusion from trial of evidence clearly establishing his guilt, is not only disproportionate to the injury he has suffered, but is vastly disproportionate to society's interest in seeing the guilty convicted without artificial obstructions.

In all of the foregoing circumstances, I find that the officers acted in the reasonable good faith that their act was proper, that the good faith exception applies and the evidence shall not be excluded by application of the rule.

Moreover, even without the application of the good faith exception, under the foregoing circumstances I find that no application of the rule is justified.

3. Abolition or modification of the exclusionary rule could be accomplished legislatively. However, to date, no such action has been taken by the Congress.

4. An excellent discussion of the social costs involved in the application of the exclusionary rule, and an analysis of the benefits that could be obtained through other remedies may be found in "Enforcing the Fourth Amendment by Alternatives to the Exclusionary Rule," by Judge Malcolm Richard Wilkey, 95 F.R.D. 211.

5. Such civil remedies are, after all, the remedies available to *innocent* victims of unlawful police conduct against whom no criminal charges are lodged. In the absence of a demonstrated need to apply the exclusionary rule for an egregious violation of the Fourth Amendment by police officers, a guilty defendant should have no greater rights, benefits or remedies than innocent victims. When the exclusionary rule in criminal cases is automatically applied, the remedies available to a guilty defendant are unjustifiably disproportionate to the remedies available to an innocent victim.

By applying the exclusionary rule only the undeniably guilty defendant will benefit by the exclusion of valid evidence establishing his guilt. As a practical consequence, as in other such cases, society will be harmed by being denied the protection it is due from the criminal justice system. The fundamental purpose of a trial, being a search for the truth, will be obstructed. It will free the guilty, produce a result that appears fictitious and absurd and foster disrespect for the law.

It is further acknowledged that no reported cases have construed the decisions this broadly. This ruling may however provide an opportunity for appellate courts to fashion at least a modified version of the rule and, if so, the case may have utility beyond its own facts.

Accordingly, the motion to suppress illegally seized evidence is denied and the evidence is admitted. It establishes beyond a reasonable doubt the defendant's guilt of possession of cocaine with the intent to distribute as charged in Count II of the indictment. The defendant is guilty as charged. He is free to pursue the other remedies available to him for the violation of his Fourth Amendment rights.