937 F.2d 604
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald McKEITHAN, Jr., Defendant-Appellant.
 No. 90-5385.
 United States Court of Appeals, Fourth Circuit.
 Submitted March 12, 1991.
Decided July 3, 1991.
As Amended Aug. 13, 1991.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Winston-Salem. Norwood Carlton Tilley, Jr., District Judge. (CR-90-119-WS)
 John J. Schramm, Jr., Peebles & Schramm, Winston-Salem, N.C., for appellant.
 Robert H. Edmunds, Jr., United States Attorney, Lisa B. Boggs, Assistant United States Attorney, Greensboro, N.C., for appellee.
 M.D.N.C.
 AFFIRMED.
 Before K.K. HALL, and WILKINS, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 A jury convicted Donald McKeithan, Jr., of possession with intent to distribute heroin and cocaine in violation of 21 U.S.C. Secs. 841(a)(1) & (b)(1)(C) and possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c)(1). We have reviewed the briefs and record and find no meritorious issues on appeal. We therefore affirm McKeithan's conviction.
 
 I.
 
 2
 McKeithan moved to suppress evidence seized during a warrantless search of his motel room. Police testified at the suppression hearing that on January 2, 1990, they knocked on McKeithan's door, introduced themselves as police officers, and asked McKeithan if they could search his motel room. The police testified that McKeithan verbally and in writing consented to the search, and produced a search waiver dated 1-2-90, a search waiver dated 1-3-89,* a constitutional rights statement, and a "Statement of Donald McKeithan," all signed "Don McKeithan" or "Don McKeithan, Jr." McKeithan denied that he gave verbal or written consent to the search of his motel room, claiming that the police were lying and had forged his signature on the consent forms; McKeithan did, however, admit that the signature on the "Statement of Donald McKeithan" was genuine.
 
 
 3
 To support his forgery defense, McKeithan produced a document expert who testified that McKeithan's signature was not on either search waiver or the constitutional rights statement. Nevertheless, finding the police officers' testimony credible, the court held that McKeithan voluntarily and knowingly consented to the search of his motel room. The court opined that McKeithan had "produced [to his document expert] a product which was different from the circumstance under which the signature was written on [the day of arrest]."
 
 
 4
 At trial, the parties stipulated that police searched McKeithan's room and uncovered fifteen pink envelopes, each containing a mixture of heroin, cocaine, and quinine (a cutting agent), one glassine envelope containing a mixture of cocaine and quinine, one plastic bottle containing quinine only, one glassine envelope containing a cocaine residue, one glassine envelope with a heroin/quinine residue, metal spoons with a heroin/cocaine/quinine residue, a balance scale with a heroin/cocaine/quinine residue, a wire mesh strainer with heroin/cocaine/quinine residue, a plastic syringe and needle, a handgun, and $1490 in cash. The police testified that these items were customarily used to consume and sell heroin and cocaine. In response, McKeithan admitted that he was a drug user but denied that he intended to distribute the confiscated cocaine and heroin. He claimed that he used the distribution tools to maintain a safe potency level of his heroin and cocaine, that he bought a large number of individual packets to economize, and that the cash money--McKeithan admitted he was unemployed for four months prior to his arrest--was the last of his mother's inheritance. The jury found McKeithan's explanations incredible and convicted on all counts.
 
 
 5
 After trial and at McKeithan's request, the court appointed a document analyst (independent from the investigating law enforcement agency) to examine the questioned signatures. The analyst concluded that based on the provided handwriting exemplars, McKeithan probably did not sign the search waiver dated 1-3-89 and may or may not have signed the search waiver dated 1-2-90 (although there was evidence to doubt that he signed the document). More significantly, the report remarked that the signature on the "Statement of Donald McKeithan" (an admitted true signature of McKeithan) and the signature on the constitutional rights form agreed with the signature on the search waiver dated 1-2-90. Finally, the report concluded that none of the signatures discussed in the remarks--including the admittedly genuine signature--agreed with the provided handwriting exemplars.
 
 II.
 
 6
 McKeithan raises three issues on appeal. First, he claims that the court improperly denied his motion to suppress. McKeithan argues that "[t]here is substantial, unrefuted evidence that the defendant never voluntarily allowed the officer into the motel room."
 
 
 7
 The sole issue at the suppression hearing was credibility, and this Court reviews credibility issues under a clearly erroneous standard. Anderson v. City of Bessemer City, 470 U.S. 564 (1985). The arresting officers testified at the suppression hearing that they witnessed McKeithan orally and in writing consent to the search. The court found the police testimony credible, and its finding on this point is plausible in light of the record. We therefore cannot say that the district court committed clear error in denying the motion to suppress. See United States v. Wertz, 625 F.2d 1128 (4th Cir.), cert. denied, 449 U.S. 904 (1980).
 
 
 8
 Second, McKeithan argues that the evidence was insufficient to support a finding of intent to distribute. McKeithan bases his argument on the fact that he possessed only a small amount of cocaine and heroin--the heroin/cocaine/quinine mixtures totaled 1.89 grams. Possession of a small amount of a controlled substance, standing alone, is insufficient to sustain a finding of intent to distribute. Turner v. United States, 396 U.S. 398 (1970); United States v. Franklin, 728 F.2d 994, 999 (8th Cir.1984); cf. United States v. Welebir, 498 F.2d 346, 350-51 (4th Cir.1971) (an intent to distribute may be inferred when a defendant simply possesses a vast quantity of drugs). However, a small amount of drugs does not preclude a finding of intent to distribute when additional circumstances evidence an intent to distribute. Turner, 396 U.S. at 405; United States v. Ramirez-Rodriquez, 552 F.2d 883, 884 (9th Cir.1977). Specifically, an intent to distribute may be inferred from possession of drug-packaging paraphernalia. United States v. Raper, 676 F.2d 841, 845 (D.C.Cir.1982), United States v. Staten, 581 F.2d 878 (D.C.Cir.1978); United States v. James, 494 F.2d 1007, 1030 (D.C.Cir.) (evidence of 9.43 grams of cocaine, combined with many glassine bags, an address book noting terms normally used in drug trafficking, and assorted paraphernalia commonly used to cut or weigh narcotics, e.g., sifter, knife, tinfoil, and spoons, sufficiently supported the jury's conclusion of intent to distribute), cert. denied, 419 U.S. 1020 (1974); United States v. Blake, 484 F.2d 50, 57-58 (8th Cir.1973) (14 grams of 17.3% pure heroin sufficient to infer intent to distribute), cert. denied, 417 U.S. 949 (1974). Although McKeithan possessed only a small amount of drugs, he also possessed at the time of arrest the cutting agent quinine, a sifter, numerous colored glassine bags and envelopes (many envelopes containing a measured amount of mixed heroin, cocaine, and quinine), a scale, a handgun, and a large amount of cash. The circumstances of his arrest therefore substantially supported a finding of intent to distribute.
 
 
 9
 Finally, McKeithan argues that the court should have ordered a new trial based on the post-conviction evidence. Although the analyst's report concludes from the exemplars that McKeithan probably did not sign the 1-3-89 search waiver and there was evidence to create doubt that he signed the 1-2-90 search waiver, these conclusions are consistent with the court's suppression ruling that McKeithan "produced a product which was different from the circumstance under which the signature was written on January 2." Further, the report remarks that the admittedly true signature on the "Statement of Donald McKeithan" agrees with the search waiver dated 1-2-90 yet does not agree with the handwriting exemplars. The report does not provide new and material evidence which would probably have produced an acquittal, United States v. Williams, 415 F.2d 232 (4th Cir.1969), and the district court's denial of a new trial based on this report was not an abuse of discretion. United States v. George, 568 F.2d 1064 (4th Cir.1978).
 
 III.
 
 10
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process. We affirm the conviction.
 
 
 11
 AFFIRMED.
 
 
 
 *
 The police searched, arrested, and secured McKeithan's motel room on January 2, and returned to search the room a second time on January 3. The search waiver for the January 3 search incorrectly states the year as 1989 rather than 1990